# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

PAUL WILLOUGHBY, PHILLIP DAVIS,     :
JAMIE STEPHENSON, et al., FOR AND ON    :
BEHALF OF THEMSELVES AND OTHER     :
PERSONS SIMILARLY SITUATED,       :

                        :     CIVIL ACTION FILE

     Plaintiffs,               :     NO. 1:13-CV-3910-SCJ

     v.                       :

                        :

YOUTH VILLAGES, INC.,          :

                        :

     Defendant.

## ORDER

This matter is before the court on Defendant's motion to decertify class [92]; Plaintiffs' motion for partial summary judgment [104]; Defendant's motion for summary judgment [105]; and Plaintiffs' motion to strike [107].

## I.      Background

### A.      Procedural History and Facts

Plaintiffs, Paul Willoughby, Phillip Davis, and Crystal Foster-Gadsden,[1] filed suit against Defendant, Youth Villages, Inc., on November 23, 2013, as an "opt-in" action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*[2] At the time of Defendant's motion

---

[1]Crystal Foster-Gadsden voluntarily dismissed her claims on April 29, 2014. *See* Docket Entry [30].

[2]Plaintiffs also raised state law breach of contract claims. However, Plaintiffs did not move for class certification under Rule 23 for those claims and the court does not discuss them further in this order.

to decertify, 48 Plaintiffs remain in the action. The parties engaged in a sampling of discovery to address certification issues and have also filed cross-motions for partial summary judgment.

Youth Villages operates one of Georgia's largest psychiatric residential treatment programs for emotionally disturbed youth. Plaintiffs are teacher counselors or lead teacher counselors employed by Youth Villages. Plaintiffs allege Youth Villages had a "fluctuating workweek" policy that resulted in violations of the FLSA because Defendant did not pay Plaintiffs overtime wages when they worked a week exceeding forty hours. Plaintiffs contend that Defendant's automatic deduction for "breaks" failed to account for the fact that Plaintiffs often did not have the opportunity to take breaks.

In general terms, a "fluctuating workweek" is a recognized form of compensation under the FLSA whereby an employee is paid a "base rate salary" each week regardless of the number of hours the employee works. The employee then receives overtime pay for hours worked over 40 at a rate of one-half the regular base rate hourly salary.

Youth Villages provided a Compensation Agreement to each employee which explained the manner in which the "fluctuating workweek" operated. *See* Docket Entry [99], Ex. E. It recited that the employee would be paid:

> A base weekly salary of $_____, to be treated as guaranteed pay for whatever number of hours are worked, however many or few per work week. The base salary covers the straight time for all hours worked during the work week.

In the event the Employee is absent from work for sick days (non-FMLA), vacation, holidays, or personal days, the full weekly salary will still be paid to the Employee. Leave taken will, of course, be deducted from the Employee's leave balance for the particular type of leave.

Should the Employee be absent for leave qualifying under the Family and Medical Leave Act, whether for a partial day or a full day of absence, the Employer will make deductions from the weekly salary on the same basis as utilized for other employees of the Employer.

Additional overtime compensation at the rate explained below will be paid to the Employee for each hour worked in excess of forty (40) hours in any work week.

Overtime compensation will be determined by dividing the base weekly salary by the number of hours worked in each week. Each overtime hour will be paid at one-half the rate determined for each respective week. Under no circumstances shall the Employee be paid less than any required minimum wage rate.

For example (using a $450/week base salary):

If Employee worked 50 hours, the base salary of $450 divided by 50 hours = average regular rate of $9. The 10 hours above 40 (overtime hours) would be multiplied by one-half the $9 rate ($4.50/hour), producing additional overtime pay of $45 ($4.50 x 10 hours) beyond the base weekly salary. Total pay would thus be $495 (the $450 base weekly salary plus $45 overtime pay) for this example week.

In another week, if the Employee worked 45 hours, $450 divided by 45 hours = a regular rate of $10, or half-time of $5/hour. This $5 rate multiplied by 5 overtime hours produces $25 in overtime pay. Total for this example week would be $475 ($450 base weekly salary + $25 overtime pay).

Should the employee work 40 hours or less in a work week, the employee will receive the base of $450 as no additional compensation would be owed.

AO 72A
(Rev.8/82)

*Id.* at 1.

Breaks of 30 minutes for every six hours worked were automatically deducted under Defendant's payroll system. The parties vigorously contest the manner in which the automatic deductions were handled. While there is testimony in the record that staffing problems and mandatory teacher-youth ratios meant that teacher counselors did not always get their breaks, there is also testimony that Plaintiffs were able to take some breaks during some portion of their employment. *See* Artumus Depo., at 34, 46-47 (testifying he read or listened to music on breaks, but stating he did not always get to take breaks); Liner Depo., at 26-28 (testifying that whether he could take a break "varied a lot over the years because staffing has varied" and that "there have been weeks gone by that I didn't get a break the whole week. Other times it's been I didn't get a break some weekends. There have been times when we were better staffed and I was able to get breaks on a regular basis."); Thompson Depo., at 38 (non-Plaintiff supervisor testified that some teacher counselors got breaks every day depending on staffing); Schwam Depo., at 41 (during her time on the "blue" unit, she would take breaks about half the time); Ventre Depo., at 38 (during weeks when there was not "acting out" behavior, he would take breaks while kids were asleep).

If an employee did not get a break, Defendant believed that the employee was instructed to inform the payroll department and a correction on their payroll records would be made. At some point during the relevant time period, Defendant also asked employees to fill out "break logs" showing whether they had actually been able to take a break. But

4

there is varying testimony on whether all Plaintiffs received the same instructions on how to seek corrections and whether the "break logs" system worked to capture accurately whether the employee had taken a break. *See* Artumus Depo., at 42-43 (testifying he believed errors were made as to his breaks on four occasions, Defendant issued a check to correct two of the errors and determined that the other two were actually miscalculations by Artumus); Graham Depo., at 42 (testifying his supervisor told him to email or text him when he could not take a break and he did not have any issues after that); Willoughby Depo., at 114 (he "supposes" that he was to fill out break log showing whether he was able to take break or not, but he never did because he was "too busy").

There is no dispute in the record that numerous employees did have their payroll records corrected on a significant number of occasions. *See* Docket Entry [101], Ex. 1.[3] At least twenty-four Plaintiffs asked for the automatic deductions to be cancelled on at least one occasion. Four Plaintiffs asked for cancellations on over 100 occasions, including one Plaintiff who received 272 cancellations.

### B.    Contentions

Defendant argues that the court should decertify the conditional class because the evidence adduced thus far shows variations on whether Plaintiffs took breaks or not; whether Plaintiffs asked for automatic break deductions to be canceled if they could not take the breaks; and whether Plaintiffs understood the fluctuating workweek compensation plan.

---

[3]The court addresses below Plaintiffs' motion to strike this exhibit.

Defendant avers that this evidence goes to liability and not amount of damages and makes collective determination inappropriate under these factual circumstances.

Plaintiffs respond that Defendant improperly ignores the fact that the court already granted Plaintiffs' conditional certification based on the common pay plan and similar job responsibilities. Plaintiffs contend that these two findings alone "mandate" that Plaintiffs' cases are "substantially similar" under § 216(b). Plaintiffs further aver that Defendant's brief relies on inapplicable Sixth Circuit law, reflects arguments better suited to a motion for summary judgment, and takes Plaintiffs' testimony out of context.

## II.    Discussion

### A.    Motion to Strike

Plaintiffs ask the court to strike portions of Defendant's reply brief arguing that Defendant raises new arguments not made in the initial brief, particular with respect to: (a) a new factual argument relating to the number of times a break deduction was canceled, (b) a new factual argument that plaintiffs who complained about break deductions had their pay "uniformly" corrected, and (c) new discussion of two district court cases. In conjunction, Plaintiffs ask that the court strike Exhibit 1 from Defendant's reply brief. Exhibit 1 collects the number of times twenty-four Plaintiffs asked for cancellations to the automatic break deduction.

While the court generally agrees that new arguments raised in a reply brief should not be recognized by the court, the court disagrees with the factual premise of Plaintiffs'

6

contention here. The theory of automatically deducted breaks has been present in this case from its inception. In its moving brief on the motion to decertify, Defendant specifically made *inter alia* the following arguments as to why it believed this case could not be decided on a collective basis: Plaintiffs "differ in respect to whether or not they were allowed to take breaks in various units, differ in whether they disclosed pay discrepancies to management, differ in whether they sought correction of pay discrepancies through proper channels . . . differ[] in their efforts to communicate to Defendant that they had worked during any breaks." *See* Motion to Decertify, Docket Entry [92], at 3-4. Defendant further argued that "[s]everal teacher counselors successfully had pay discrepancies corrected, others made no attempts and actually did not disclose missed breaks." *Id.* at 5. Defendant then averred that Plaintiffs "sought and were granted corrections to pay when pay discrepancies were discovered." *Id.* at 15-20.

The court is at a loss, therefore, to determine how an exhibit setting forth in tabular form all Plaintiffs who had automatic deductions canceled and how many times cancellations were made can be considered a "new factual argument." Because the court does not find this to be a new argument, the court will not strike the exhibit. Plaintiffs further assert that the exhibit is "misleading" because it does not show the time frame when the employee asked for the correction. The court does not find this a reason to strike the exhibit. The pertinent issue is that some Plaintiffs did ask for and receive corrections at

7

various times.  The fact that there are such variations in the record counsels against a collective action.

Plaintiffs next contend Defendant's assertion that if a cancellation was sought, pay was "uniformly" corrected, is another a new factual argument.  The court need not parse whether the use of the term "uniformly" is "new" because the relevant point for the purpose of considering Defendant's motion to decertify is the fact that some Plaintiffs asked and received corrections and others apparently did not.  The court need not determine whether all Plaintiffs who asked for corrections received them.  It is clear that any such determination would need to be made on an individual basis and therefore again counsels against collective determination.

Finally, Plaintiffs argue that Defendant should be barred from citing two district court cases decertifying FLSA collective actions because Defendant did not cite to those two cases in the moving brief.  Plaintiffs offer no citation for this contention, and the court finds no merit in such an argument.  For the foregoing reasons, the court DENIES Plaintiffs' motion to strike [107].  The court further notes that even though it concludes that Defendant did not raise any new arguments in its reply brief, it permitted Plaintiffs to file a sur-reply to Defendant's motion for decertification.  *See* Docket Entry [120].

## B.    Decertification

The FLSA authorizes collective actions against employers alleged to have violated the Act.  *See* 29 U.S.C. § 216(b).  Once a plaintiff files a complaint, any other similarly

AO 72A
(Rev.8/82)

situated employees who want to join must affirmatively consent to be a party and file such consent with the court. *See e.g., Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1017 (11th Cir. 2007).

The Eleventh Circuit has "sanctioned a two-stage procedure for a district court to effectively manage FLSA collective actions in the pretrial phase." *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008). "The first step of whether a collective action should be certified is the notice stage. . . . Here, a district court determines whether other similarly situated employees should be notified." *Id.* In the first stage, the plaintiff "has the burden of showing a 'reasonable basis' for his claim that there are similarly situated employees." *Id.* (noting that courts apply a "fairly lenient standard" at this stage). In this case, the court made that determination in its October 3, 2014, order conditionally certifying a proposed class. *See* Docket Entry [53].

"The second stage is triggered by an employer's motion for decertification." *Id.* at 1261. Because the court and the parties have the advantage of a more established record than exists at the notice stage, the court makes "a more informed factual determination of similarity." *Id.* "This second stage is less lenient, and the plaintiff bears a heavier burden." *Id.* (quotations and citations omitted).

In *Anderson v. Cagle's, Inc.*, 488 F.3d 945 (11th Cir. 2007), the court declined to specify precisely just how much "less lenient" the standard was at the decertification stage. But the court did say that "logically, the more material distinctions revealed by the evidence,

9

the more likely the district court is to decertify the collective action." *Id.* at 953. Although "the FLSA does not require potential class members to hold identical positions," they must share more than job duties and manner of pay. *Id.* "Otherwise, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.*

The *Anderson* court also cited with approval three factors considered by the court in *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001): "(1) disparate factual and employment settings of the individual plaintiffs: (2) the various defenses available to defendants that appear to be individual to each plaintiff, and (3) fairness and procedural considerations." *Id.* Ultimately, however, "whether a collective action is appropriate depends largely on the factual question of whether the plaintiff employees are similarly situated to one another." *See Morgan*, 551 F.3d at 1262. To satisfy the "similarly situated" standard, Plaintiffs must establish *inter alia* "liability on a class-wide basis." *See Rindfleisch v. Gentiva Health Services, Inc.*, 22 F. Supp. 2d 1295, 1303 (N.D. Ga. 2014) (Jones, J.) (citing *Briggins v. Elwood TRI, Inc.*, 882 F. Supp. 2d 1256, 1267 (N.D. Ala. 2012)).

Finally, the *Morgan* court noted that addressing whether a collective action is fair "also requires looking to the purposes of § 216(b) actions under the FLSA: (1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *See Morgan*, 551 F.3d at

1264-65. "We also bear in mind that the FLSA is a remedial statute that should be liberally construed." *Id.* at 1265 (citation omitted).

As this recitation of case law makes clear, the court applies different standards at the decertification stage than it does for conditional certification. Therefore, Plaintiffs' argument that Defendant has "ignored" the court's findings at the conditional certification stage is contrary to the Eleventh Circuit's instruction that the "similarities necessary to maintain a collective action under § 216(b) must extend beyond the mere facts of job duties and pay provisions." *Cagle's*, 488 F.3d at 953 (internal quotation marks omitted).

## C.    Fluctuating Workweek

Although the FLSA generally requires employers to pay employees one and one-half the "regular rate" for all hours works in excess of forty hours, the "fluctuating workweek" is a recognized alternative plan of compensation under the FLSA. *See, e.g., Davis v. Friendly Exp., Inc.*, Appeal No. 02-14111, 2003 WL 21488682 (11th Cir. Feb. 6, 2003). The Eleventh Circuit has described the fluctuating workweek as a:

> method of payment [which] allows an employee whose hours fluctuate from week to week to be compensated at a fixed amount per week as straight-time pay irrespective of the number – few or many – of hours worked. Payment for overtime hours under this method is at one-half time regular-rate instead of the standard one and one-half time rate because the straight-time rate already includes compensation for all hours worked. The regular-rate of hourly compensation will vary from week to week depending on the number of actual hours worked in any given workweek; it is calculated by dividing the number of hours worked into the amount of the straight-time salary. The mathematics of this payment structure means "the more the employee works and the more overtime the employee logs, the less he or she is paid for each

11

additional hour of overtime." *Monahan v. County of Chesterfield, Va.*, 95 F.3d 1263, 1280 (4th Cir.1996).

*Id.* at *1.

Under regulations implementing the FLSA, an employer is permitted to use the fluctuating workweek calculation of pay only if

> (1) the employee clearly understands that the straight-salary covers whatever hours he or she is required to work; (2) the straight-salary is paid irrespective of whether the workweek is one in which a full schedule of hours are worked; (3) the straight-salary is sufficient to provide a pay-rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours worked is greatest; and (4) in addition to straight-salary, the employee is paid for all hours in excess of the statutory maximum at a rate not less than one-half the regular rate of pay.

*Id.*  The employee bears the burden of proving non-compliance with the fluctuating workweek method. *Id.* at *3 (citing 29 C.F.R. § 778.114); *see also Garcia v. Port Royale Trading Co.*, 198 F. App'x 845 (11th Cir. 2006).

Here, Plaintiffs' theory of the case is that Defendant is not entitled to take advantage of the fluctuating workweek compensation plan because it cannot satisfy the four regulatory requirements necessary for such a plan.  In particular, Plaintiffs argue that although the Compensation Agreement might have set forth a permissible fluctuating workweek plan, the manner in which Defendant implemented that plan – particularly with respect to the automatic deduction of hours for breaks – caused it to fall outside the regulatory requirements because Plaintiffs ended up not being paid one-half time for hours they worked in excess of forty in a workweek.

12

Significantly, although Plaintiffs contend that the court can make this determination on a collective basis because all employees were paid under the Compensation Agreement and were subject to automatically deducted breaks, the court finds there is varying testimony on whether employees could or could not take the automatically deducted breaks and whether employees sought and received cancellations of these automatic breaks when they were not able to take them. For the reasons discussed below, the factual circumstances of this case – which require the court to make such individualized inquiries – preclude collective determination.

## C.   Automatically Deducted Breaks

Plaintiffs allege that they are generally scheduled for 42 hours of work per week, and that 2.5 hours of pay is automatically deducted from their weekly paycheck for 30 minute breaks every six hours of work. Plaintiffs contend, however, that they rarely, if ever, were permitted to take breaks. As Defendant points out, because of the fact that Youth Villages operates on a fluctuating workweek schedule, it is important to discuss the automatically deducted breaks with particular care to language. Under the fluctuating work week schedule, the base rate an employee receives is always the same, but the employee is also paid one-half time for each hour worked in excess of forty hours. Because Plaintiffs are paid a flat base salary every week regardless of the number of hours worked, Plaintiffs do not receive a deduction in pay for the breaks. Rather, the number of hours worked is deducted. This potentially could impact the number of overtime hours for which an

13

individual is paid and this alleged miscounting of overtime hours (not any deduction of pay) is the basis for Plaintiffs' claims.

Under the FLSA, "if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted." *Reich v. Dep't of Conservation & Nat. Res.*, 29 F.3d 1076, 1082 (11th Cir. 1994) (citing 29 C.F.R. § 785.11). A plaintiff must demonstrate that (1) he worked overtime without compensation and (2) the employer knew or should have known of the overtime work. *See, e.g., Allen v. Board of Public Education for Bibb County*, 495 F.3d 1306 (11th Cir. 2007); *see also* 29 C.F.R. § 785.11 (interpreting "suffer or permit to work" requirement to mean that employer violates FLSA when it "knows or has reason to believe that he is continuing to work and the time is working time"). *See also Bailey v. TitleMax of Georgia, Inc.*, 776 F.3d 797, 801 (11th Cir. 2015) ("If an employer knew or had reason to know that its employee underreported his hours, it cannot escape FLSA liability by asserting equitable defenses based on that underreporting."). As *Allen* and *Bailey* demonstrate, however, whether the employer has such "constructive knowledge" of an employee's overtime is often a fact-intensive question – which is not conducive to a collective determination.

The parties engage a bit over whether the Eleventh Circuit's decisions in *Reich* and *Bailey* are inconsistent with the Sixth Circuit's decision in *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869 (6th Cir. 2012), upon which Defendant relies. The court need not address that issue on the motion for decertify. What is relevant to the legal question before

14

the court on decertification is the type of evidence that the parties will present on whether Defendant knew or had reason to believe that employees were working overtime hours without pay. In this case, the court finds that evidence varies from Plaintiff to Plaintiff.

For example, here, even Plaintiffs' own expert agrees that not every week worked by each Plaintiff exceeded forty hours. *See* Thompson Report, Docket Entry [99], Ex. H, at 1 (89% of plaintiff workweeks were 40 hours or more). While Mr. Thompson asserts that every Plaintiff has at least one week in which he has worked more than 40 hours in a week, that data assumes that none of the automatically deducted breaks were actually taken. The court finds that is an improper assumption because the evidence in the record shows that at some points Plaintiffs could take their breaks and at others they could not.

From the perspective of determining the appropriateness of a collective action, the danger in these "assumptions" becomes even more apparent when considering Mr. Thompson's damage estimates. Even when assuming only half of the deducted breaks were actually worked, he estimates individual damages ranging from $2 to $6,822. *Id.* at 2. The court cannot "assume" for the purposes of liability that the Plaintiff alleged by Mr. Thompson to have been damaged to the extent of only $2 either worked at least half of the deducted breaks or did not ask for corrections for those breaks s/he did work through. These fact matter because they make the difference not just as to the extent of damages, but as to whether there is liability at all.

AO 72A
(Rev.8/82)

Even according to Plaintiffs' own expert, it is a given that at least some of Plaintiffs are operating on a very close margin with respect to liability. To determine liability, therefore, the fact-finder will need to look at each Plaintiff's testimony concerning whether he was able to take breaks or not during a particular time period. The fact-finder will also then need to look on a week-by-week basis to determine whether this Plaintiff took any accrued leave during those weeks in which he claims he was not able to take breaks and therefore his hours exceeded forty. The fact-finder must also then consider whether Plaintiff asked for and received corrections for any particular week he asserts he worked overtime hours, and whether this particular Plaintiff's supervisor knew or should have known Plaintiff was working overtime that week. This last inquiry hinges on evidence such as what instructions that particular supervisor gave the employee on whether he was permitted to take breaks, whether he was to "refuse" to take breaks, or how he might have been instructed to fill out a "break log" after their use was instituted.

For these reasons, Mr. Thompson's Supplemental Declaration that "every plaintiff had at least one week during the liability period when they are recorded as having worked more than 40 hours in a week, prior to accounting for any automatically deducted break time that was worked"[4] and that he accounted for employee-sought corrections in his damages calculations, are not sufficient to establish liability as to each Plaintiff.

---

[4]*See* Docket Entry [120], Ex. 4, Thompson Supplemental Declaration, ¶¶ 3-4.

AO 72A
(Rev.8/82)

In *Gentiva*, this court made it clear that "every Plaintiff has to actually be owed overtime compensation in a collective action solely seeking overtime damages." 22 F. Supp. 2d at 1303. A "collective action is improper when actual liability cannot be established on a class-wide basis." *Id.* As "a general rule, a group of opt-in plaintiffs cannot be similarly situated for purposes of a collective action when individual determinations regarding liability must be made." *Id.* (citing *Reich v. Homier Distrib. Co.*, 362 F. Supp. 2d 1009, 1013-14 (N.D. Ind. 2005)).

Furthermore, as the court explained above, a plaintiff must show more than just the fact that his employer knew or should have known he worked overtime; he must also show that his employer knew or should have known he was not receiving overtime pay for those hours worked. Plaintiffs point to their response to Interrogatory No. 7 as evidence that they were not paid for breaks that they were not able to take. *See* Response, Docket Entry [99], at 10-12, 21 (citing Ex. G, Interrogatory No. 7). Interrogatory No. 7, however, addresses only whether any particular Plaintiff was able to take a break. Interrogatory No. 7 says nothing about whether a Plaintiff was paid for the break period they did not receive.

The record shows that at least twenty-four Plaintiffs asked – some a significant number of times – to have their pay records corrected to cancel the automatic deductions because they were unable to take breaks on a particular week. These are the some of the same Plaintiffs who testified in response to Interrogatory No. 7 that they did not always receive breaks. But if the automatic deduction is canceled when a Plaintiff did not receive

17

a break, there is no violation. Other Plaintiffs never sought to cancel any deductions. These differences among Plaintiffs make it impossible for the court to determine on a collective basis whether each Plaintiff ever worked a week in excess of 40 hours without receiving overtime pay either at the time the pay check was issued or through corrections requested later by the employee.

Moreover, the fact that many Plaintiffs asked for and received corrections on their pay related to the automatic deduction and some Plaintiffs testified that they were able to take breaks at least some of the time also creates individual defenses on liability. The court cannot conclude that "every Plaintiff" in this action is "actually [] owed overtime compensation." In this manner, the instant case is markedly different from *Morgan* and *In re Tyson Foods, Inc.*, 694 F. Supp. 2d 1372 (M.D. Ga. 2010), cited by Plaintiffs. In *Morgan*, the parties contested whether the employer could appropriately claim a certain class of employees as exempt. *Tyson Foods* was a "donning and doffing" case where each employee was required to put on certain protective sanitary clothing before entering the production facility.

In *Morgan* and *Tyson Foods*, there was no doubt that a single corporate policy impacted all plaintiffs in the same way. Here, in contrast, while the automatic break deduction policy applied to all employees, it impacted employees in different ways depending on whether they had the opportunity to take breaks and whether they asked for corrections to be made for the automatic deductions. These variations also impact whether

18

any particular Plaintiff would be able to show that Defendant knew or should have known of uncompensated overtime work. For example, if a Plaintiff asked for corrections to his pay for automatic deductions on over 100 occasions – as Plaintiff Willoughby did here – then it might be less likely that this employee would be able to show that Defendant should have known of uncompensated overtime work. All information before the employer would point to the fact that when the employee did work overtime, he was compensated for that overtime because the employee noted the time errors and asked for the compensation.

On the other hand, the court recognizes that based on evidence in the record, another Plaintiff might potentially be able to show he worked through breaks, his supervisor knew because he denied him breaks or encouraged him to "refuse" the breaks, and the employee never asked for a correction. Plaintiffs have placed evidence into the record with respect to several employees which could support an inference that certain supervisors encouraged employees not to report time that they had worked on breaks.

But the operative point for the purpose of the whether to decertify a collective action is that there is varying evidence in the record as to each of the Plaintiffs from who any discovery has been taken thus far. *Compare Zulauf v. Amerisave Mortg. Corp.*, 911 F. Supp. 2d 1266, 1275 (N.D. Ga. 2012) (Duffey, J.) ("absent evidence of a FLSA-violating company-wide policy (or policy-to-violate-the-policy), Amerisave's knowledge of *each* Plaintiff's overtime is relevant, and such individualized defenses favor decertification"). Here, there is evidence in the record that different supervisors gave employees different

19

instructions on where to report corrections to time records, whether to "refuse" breaks or not, and how to use break logs. For these reasons, Plaintiffs' argument that the "common response to each defense [is] that Defendant either encouraged the miss[ed] reporting or had constructive knowledge of missed breaks"[5] is inapposite under the factual circumstances.

As the court noted in *Gentiva*, "representative evidence" is not sufficient to establish that each Plaintiff worked a week in excess of forty hours without appropriate overtime compensation. Such a "burden-shifting analysis is only applicable when damages are certain and the uncertainty lies only in the amount of damages arising from the statutory violations by the employer." 22 F. Supp. 2d at 1304-05 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) (quotation omitted)). In this case, there is uncertainty as to whether damages are owed at all to at least some portion of Plaintiffs. The court reaches this conclusion not merely because there is a "fact-intensive" inquiry involved; rather, the court finds that the material facts will vary among Plaintiffs as to the significant question of liability – whether due to automatically deducted breaks a Plaintiff ever worked in excess of 40 hours per week without appropriate compensation and with the employer's knowledge that he worked those hours without compensation. Therefore, the court must GRANT Defendant's motion to decertify class [92].

---

[5] *See* Docket Entry [120], at 13.

Because the parties briefed their cross-motions for summary judgment in the context of a collective action, the court denies those motions with leave to renew them in the individual actions.

## III.   Conclusion

The court GRANTS Defendant's motion to decertify class [92]; DENIES WITH LEAVE TO RENEW Plaintiffs' motion for partial summary judgment [104]; DENIES WITH LEAVE TO RENEW Defendant's motion for summary judgment [105]; and DENIES Plaintiffs' motion to strike [107].

The claims of all opt-in Plaintiffs are hereby DISMISSED WITHOUT PREJUDICE. However, this action shall proceed regarding the named Plaintiffs' individual claims.

**IT IS SO ORDERED** this 26th day of June 2015.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)