## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PAUL WILLOUGHBY, et al., FOR      :
AND ON BEHALF OF                  :
THEMSELVES AND OTHER              :     CIVIL ACTION NO.
PERSONS SIMILARLY                 :     1:13-CV-03910-SCJ
SITUATED,                         :
                                  :
    Plaintiffs,              :
                                  :
    v.                       :
                                  :
YOUTH VILLAGES, INC.,             :
                                  :
    Defendant.               :
                                  :

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. No. [140]) and Defendant's Motion for Leave to File a Surreply Contesting Plaintiffs' Reply in Support of Petition for Attorney Fees and Expenses (Doc. No. [145]).

Earlier this year, the parties reached settlements as to forty-eight Plaintiffs in various related Youth Villages FLSA cases.[1] Doc. No. [136-1]. A material part of the settlement was that Defendant Youth Villages, Inc. would pay only a portion of Plaintiffs' attorneys' fees, as determined by the Court, with a high/low agreement

---

[1] The litigation began on November 25, 2013. Doc. No. [1].

on the fees of $80,000– $265,000.  Doc. No. [140], p. 1.  The agreement further states that "[t]he amount of **taxable** costs to be awarded will be determined by the Court . . . .[c]osts are not a part of the high/low agreement."  Doc. No. [136-1], p. 3 (emphasis added).

The pending motion for attorneys' fees has been fully briefed and is now ripe for ruling. In its order, the Court has been mindful of the Eleventh Circuit's instructions that:  "[t]he [district] court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.  If the court disallows hours, it must explain which hours are disallowed and show why an award of these hours would be improper." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1304 (11th Cir. 1988) (citations omitted).

Here, Plaintiffs request the high amount of attorneys' fees (*i.e.*, $265,000) and Defendant requests the low limit of $80,000.  Doc. Nos. [140, 141].  Defendant presents six challenges to Plaintiffs' requested fees, which the Court will address below.[2]

_____

[2]  More specifically, Defendant opposes the Plaintiffs' motion and requests that the Court limit Plaintiffs' attorneys' fees to the $80,000 low limit on the following grounds: (1) Plaintiffs' efforts were of limited success in respect to both the legal theories advanced and damages sought; (2) Plaintiffs received on average only 23% of their initial inflated

The starting point for awarding attorneys' fees is to determine the lodestar. ACLU v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999). The lodestar "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." Id. (internal quotations omitted).[3]

The Court begins by considering the hourly rate asserted by Plaintiffs' lead counsel. In the case *sub judice*, Plaintiffs seek an hourly rate of $400 for lead counsel, Doug Kertscher, who has twenty-two years of experience. Doc. No. [140], p. 5. Plaintiffs state that this rate is "supported by *Daily Report Going Rate* statistics [Doc. No. [140-3], and are well within the range awarded by courts in this District and Division in similar cases." Doc. No. [140], p. 6. In opposition, Defendant argues that

---

demands, thus, recovery should be reduced by 77%; (3) Plaintiffs seek compensation for motions for which they were unsuccessful involving decertification, summary judgment, joinder, striking evidence and discovery, which is non-compensable time, therefore, a reduction is required for these unsuccessful efforts; (4) Plaintiffs pursued theories that were unsupportable (*e.g.*, invalidation of the fluctuating work week and joinder of individuals after decertification of the same class); (5) lead counsel's requested hourly rates are not reasonable under the particular circumstances of this case and should be reduced; and (6) there should be a proportionally reduction in view of the eleven cases resolved before mediation. Doc. No. [141], pp. 1–2.

[3] "The product of these two figures is the lodestar and there is a 'strong presumption' that the lodestar is the reasonable sum the attorneys deserve." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). The Court understands the case law to permit this presumption to be rebutted.

Mr. Kertscher's hourly rate is "unreasonably high."[4]   Doc. No. [141], p. 10. "Defendant asserts that "Mr. Kertscher is not yet a $400-an-hour attorney when it comes to FLSA matters."   Id. at p. 11.   Defendant states that a $250 rate is more appropriate as a review of the cases litigated by Mr. Kertscher indicates that "he should not be considered an expert in FLSA litigation,"has litigated only one contested FLSA action, and he billed for basic research questions that someone familiar with FLSA litigation should know. Id. at pp. 11–13.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."   Norman, 836 F.2d at 1299.   "The party seeking attorney's fees bears the burden of producing 'satisfactory evidence that the requested rate is in line with prevailing market rates.'"   Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). "Satisfactory evidence [that the requested rate is in line with prevailing market rates] at a minimum is more than the affidavit of the attorney performing the work[5] . . . [and] must speak to rates actually billed and paid in similar

---

[4]   Defendant has not challenged the rates of the other attorneys/paralegal (varying from $250 to $80 per hour) working on the case.   After review, the Court finds their rates reasonable.

[5]   The Eleventh Circuit has also held that "[w]hat [an attorney] charges clients is powerful, and perhaps the best, evidence of his market rate; that  is most likely to be what

lawsuits." <u>Norman</u>, 836 F.2d at 1299.  "In establishing a reasonable hourly rate, the district court may [also] rely on its own expertise . . . ." <u>Maner v. Linkan LLC</u>, 602 F. App'x 489, 493 (11th Cir. 2015); <u>see also</u> <u>Norman</u>, 836 F.2d at 1304 (" the district court was correct in determining that it must rely on its own expertise in determining a reasonable hourly rate.").  Here, the Court is aware of the Atlanta legal market for FLSA services by lawyers of reasonably comparable skills, experience, and reputation and is also aware of rates actually billed and paid in similar lawsuits.[6]  The Court concludes that $400.00 is a reasonable hourly rate for Mr. Kertscher in this case.  <u>See e.g.</u>, <u>Butz v. Amware Distrib. Warehouses of Ga., Inc.</u>, No. 1:13-CV-3204-WSD, 2014 WL 6908393, at *2 (N.D. Ga. Dec. 8, 2014) (determining "that [first attorney's] hourly rate of $425.00, [and second attorney's] hourly rate of $400.00 . . . are reasonable for the services performed in this [FLSA] litigation.") and <u>Eason v. Bridgewater &</u>

---

he is paid as 'determined by supply and demand.'" <u>Dillard v. City of Greensboro</u>, 213 F.3d 1347, 1354–55 (11th Cir. 2000).

[6]  The Court has not given controlling weight to these prior awards (but does deem them relevant) as the Court notes that the Eleventh Circuit has held that "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." <u>Dillard</u>, 213 F.3d at1355.

AO 72A
(Rev.8/82)

Assocs., Inc., 108 F. Supp. 3d 1358, 1364 (N.D. Ga. 2015) (determining that a $400/hour rate was reasonable for a partner in an FLSA case).[7]

With regards to a reasonable number of hours, fee applicants must exercise "billing judgment." Norman, 836 F.2d at 1301.  This means that a reasonable number of hours "cannot include 'those that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation, or experience of counsel.'" Frazier v. Wurth Indus. of N. Am., LLC, No. 1:08-cv-01634-JOF, 2009 WL 3277635, at *2 (N.D. Ga. Oct. 7, 2009) (quoting Norman, 836 F.2d at 1301).  "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.'" Barnes, 168 F.3d at 428.

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d at 1303. "Further, fee counsel should . . . maintain[] records to show the time spent on the

---

[7]   Defendant is also correct in that there is authority in the Northern District that states that travel time should be compensated at only one-half of an attorney's normal rate. See Gaylor v. Greenbriar of Dahlonega Shopping Ctr., Inc., No. 2:12-CV-00082-RWS, 2014 WL 2195719, at *5 (N.D. Ga. May 27, 2014) ("the Court also believes that travel time should be compensated at only one-half of an attorney's normal hourly rate. Therefore, [the attorney's] travel time will be compensated, but only at one-half of his approved hourly rate.").

different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman, 836 F.2d at 1303. "A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." Id.

"Those opposing fee applications have obligations, too.  In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" Barnes, 168 F.3d at 428 (citing Norman, 836 F.2d at 1301).[8]

Defendant's objections/arguments for exclusion of hours are as follows.

Defendant argues that Plaintiffs cannot recover for paralegal work that was administrative in nature and for all work that was excessive, redundant, or

---

[8]   Plaintiffs argue that the Defendant in the case *sub judice* has failed to meet its obligation as the Excessive Time Analysis Chart (submitted by Defendant) does not provide evidence as to why anything is allegedly excessive.  Doc. No. [144], pp. 2–3.  However, the Court is unable to agree as Defendant has acted similarly to the defendants in the Barnes case in which the Eleventh Circuit stated: "[t]he defendants in this case have discharged that obligation well. In the district court and in this Court, they have carefully analyzed the billing records and done what the fee application itself should have done, which is to calculate the number of hours billed for completing each of various litigation tasks: drafting the complaint, drafting the briefs, preparing for and attending the status conference, and preparing for and attending the Internet demonstration. Defendants have put forward specific arguments designed to show that many of the hours submitted by the plaintiffs in connection with a given task indicate a lack of proper billing judgment." Barnes, 168 F.3d at 428.

unnecessary as reflected in an Excessive Time Analysis Chart attached to its brief as Exhibit E.  Doc. Nos. [141], p. 14–15; [141-5].   A review of Defendant's chart shows that it analyzes $41,257 in fees to be "cut" based on excessive time spent drafting/reviewing the Complaint; analyzing Defendant's answer; preparing for the Rule 26(f) Settlement Conference; researching prior case involving the Defendant; researching the fluctuating work week (FWW) method; preparing a motion for conditional certification and reply brief; preparing a motion to amend and reply brief; performing miscellaneous tasks, researching/arguing Rule 8; preparing similar complaints; performing duplicative tasks; and unnecessary research related to the Americans with Disabilities Act (ADA).  Doc. No. [141-5].

Next, Defendant argues that Plaintiffs' fee award should be reduced on a pro-rata basis to reflect the fees that were already paid by Defendant as a part of eleven individual settlements as a complete satisfaction of the settling plaintiffs' individual claims.  Doc. No. [141], p. 17.  Defendant states that the eleven settlements constitute "18% of the [individuals] originally in this case" and the "settlements included amounts for attorneys' fees and costs."  Id.  Defendant states that it is therefore entitled to an 18% fee discount. Id.

Plaintiffs' response brief does not fully address this argument, only to state that they have sought "de minim[i]s fees (less than $3,000) for working with [the prior settling] Plaintiffs, and this work served the interests of the larger plaintiffs' group, since the dismissed Plaintiffs provided information about Defendant's supervisory and pay practices." Doc. No. [144], p. 10.  The Court notes that Plaintiffs do not specifically explain which fees constitute the de minimis fees.  Nevertheless, the Court agrees with Defendant that there should be a reduction to account for the attorney's fees that Defendant has already paid as a part of individual settlements with other Plaintiffs.

The Court will now review Plaintiffs' counsel's invoice (at Doc. No. [140-1]) and exercise its own billing judgment as to certain hours and determine the reasonable number of hours.   The Court first notes that the invoice shows that Plaintiffs' counsel's actual fees were $363,822.50 and if the Court awards the negotiated high amount of $265,000.00, Plaintiffs' counsel will take a loss of $98,822.50.[9]  Doc. No. [140], p. 2.  Yet, Defendant does not agree that $363,822.50 is the proper starting point. Doc. No. [141], p. 5.  A review of the settlement agreement shows that the parties did not include a provision as to the starting point/amount for

_____

[9] Plaintiffs state that this amounts to a voluntary reduction of 27%.  Doc. No. [144], p. 1.

the Court to consider (they only agreed to a maximum (*i.e.*, $265,000) and minimum amount (*i.e.*, $80,000)).  In the absence of such an agreement, the Court will consider the invoice as submitted and permit the invoice's total of $363,822.50 to be the starting point of the Court's consideration.

As stated above, the Court will exercise its own billing judgment as to certain hours and determine the reasonable number of hours.  "Keeping in mind that 'the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done,'" the Court concludes that the number of hours claimed by Plaintiffs' counsel are unreasonably high as there are some excessive and unnecessary hours.  Barnes, 168 F.3d at 432 (citing Norman, 836 F.2d at 1306) The Court upholds Defendant's arguments (as set forth in Doc. No. [141-5]),[10]as well as

_____

[10] While the Court upholds Defendant's arguments as to excessive and unnecessary hours, the Court does not necessarily agree with the numerical amounts of the reductions asserted by Defendant, as they appear to be based on the least time to have theoretically completed the task, as opposed to the time that may be conscionably billed in accordance with applicable authority.  See Barnes, 168 F.3d at 432. To this regard, the Court will exercise its discretion to make an across the board cut of the hours presented by Plaintiffs.

10

Defendant's arguments concerning a reduction for prior settling plaintiffs[11] and paralegal administrative work.

When an applicant claims fees for an unreasonable number of hours, "the court may make an award on its own experience." Norman, 836 F.2d at 1303.[12] In the end, the Court must bear in mind that "[a] request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). Here, after considering applicable authority, the Court will apply

---

[11]  While not clear, it appears that Plaintiffs may be arguing that it is duplicative to cut their attorney hours on the basis of settling plaintiffs and cut again based on limited success (Doc. No. [144], p. 9, n.6); however, the Court does not consider the cuts to be duplicative.

[12]  "In determining what is a 'reasonable' hourly rate and what number of compensable hours is "reasonable," the court is to consider the 12 factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974)." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008). "Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." Id. at n.2 (citations omitted).

AO 72A
(Rev.8/82)

an across the board cut of 25% of the hours billed, which amounts to a reduction of $90,955.63 from the $363,822.50 invoice submitted.  The lodestar amount is thus, $272,866.87.

After the lodestar is determined, the Court must next consider an adjustment for results obtained. Norman, 836 F.2d at 1302. The Eleventh Circuit has stated,

> [i]f the result was excellent, then the court should compensate for all hours reasonably expended . . . . If the result was partial or limited success,[13] then the lodestar must be reduced to an amount that is not excessive . . . . In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion . . . . A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.

Id.

Here, Defendant argues strongly that Plaintiffs had limited success (in certain motions presented and in the actual recovery). Doc. No. [141], pp. 4, 8. For example, Defendant shows that Plaintiffs presented a total collective demand of $397,228, plus attorneys' fees and costs and the ultimate settlement for all Plaintiffs was $93,157.83 (inclusive of liquidated damages).  Id. at p. 4; Doc. No. [136-1], p. 3.[14]  Defendant

---

[13] "What constitutes partial success is determined on a case-by-case basis." Bivins, 548 F.3d at 1351 n.2.

[14] Defendant states that this number is a "split 50% for back pay and 50% for liquidated damages." Doc. No. [141], p. 4.

states that the actual recovery by Plaintiffs on average was only 23.87% of the initial demand.  Doc. No. [141], p. 4.[15]

In contrast, Plaintiffs argue "excellent results" and that their lawsuit forced a change in Defendant's pay practices. Doc. No. [140], p. 4.  Plaintiffs argue that Defendant's arguments as to the amounts recovered are based upon factual error in that Defendant's based their argument on the second of two factual scenarios presented by Plaintiffs' expert.[16]  Doc. No. [144], 4.  Plaintiff states that if the Court uses Plaintiffs' expert's first factual scenario and includes the six other plaintiffs who

_____

[15]  In their brief, Plaintiffs argues that the Supreme Court in City of Riverside v. Rivera, 477 U.S. 561, 575 (1986) has rejected a rule of proportionality. Doc. No. [144], p.3. Defendant denies that it has requested an award of fees being reduced in proportion to what Plaintiffs' recovered in damages.  Doc. No. [145-1], p. 4.  After review, the Court declines to apply the Rivera case as it is not an FLSA case, it is a civil rights case, based on "Congress' purpose" in enacting 42 U.S.C. § 1988.  It has been held that "cases brought under the FLSA are not 'civil rights' cases, although the Court does borrow from Section 1988 in awarding attorneys' fees."  Fox v. Tyson Foods, Inc., No. 4:06-CV-4676-VEH, 2009 WL 9541256, at *17 (N.D. Ala. Feb. 17, 2009).  In addition, at least one other court has found that there is "only one [non-binding] district court case in which the court recognized that the FLSA was analogous to civil rights statutes for purposes of adjusting the lodestar."  Id. at *18.  In the absence of a binding decision, the Court declines to uphold Plaintiffs' argument that it is error to proportionately reduce the lodestar amount in this case.  This Court does, however, "recognize that '[t]he purpose of the fee provision of the FLSA is to 'insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.'"  Id.  The Court further finds that some reduction of "some proportion" of the lodestar is appropriate in light of Plaintiffs' limited success.  Norman, 836 F.2d at 1302.

[16]  Plaintiffs further state that if the Court includes the six other plaintiffs who settled prior to mediation, the "the total number of plaintiffs who obtained recovery as a result of the efforts of Plaintiffs' counsel [is] fifty-four (54) persons."  Doc. No. [144], p. 4, n.4.

13

settled prior to mediation, Plaintiffs recovered 86% of the amount that they sought. Doc. Nos. [144], p. 4; [144-2].  In light of the above-stated ruling concerning the prior settling plaintiffs, the Court does not find it proper to include those plaintiffs in the success calculations as to the pending motion for attorneys' fees—therefore, the recovery percentage asserted by Plaintiffs is less than 86%.  Furthermore, it appears to the Court that Plaintiffs' 86% calculation only accounts for back pay/lost wages and does not account for liquidated damages, which were sought in the Complaint. Doc. No. [1], p. 18, ¶ c.[17]  Liquidated damages are an amount equal to the amount of wages lost.  See 29 U.S.C. § 216 (b) ("Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation . . . the payment of wages lost and an additional equal amount as liquidated damages.").  In considering liquidated damages, the percentage of actual recovery drops to less than 50%.

As stated above, Plaintiffs also argue "excellent results" in that their lawsuit forced a change in Defendant's pay practices to come into compliance with the FLSA. Doc. No. [140], pp. 4–5. Defendant strongly opposes Plaintiffs' policy/pay practices

---

[17]  The excerpt of Plaintiffs' expert's report found in the record states that "[t]hese damages do not include interest or liquidated damages."  Doc. No. [144-2], p. 2.

AO 72A
(Rev.8/82)

change argument.  In an sur-reply objection brief, Plaintiffs cite to the deposition of Latonya Pendleton (*i.e.*, "Defendant's 30(b)(6) depo.) as support for their position that there was a pay practice change.  Doc. No. [146], p. 4 (referencing Doc. No. [126-2], p. 36 (line 25) and p. 37 (lines 1-11)).  In her deposition, when asked about Defendant's motivation for making an automatic deduction for every six hours worked, Ms. Pendleton responded: "Well, honestly, this lawsuit presents us an opportunity to reevaluate that and basically, you  know, change that setting and that method."  Doc. No. [126-2], p. 37, lines 4–6.  After review, the Court finds the testimony somewhat ambiguous and is unable to find that this testimony ***conclusively*** shows that Defendant made a policy/pay practices change.[18]

On the whole, after reviewing the entirety of the parties' arguments, the Court finds that a reduction is appropriate as the relief here is limited in comparison to the scope of the litigation as a whole.  See Hensley v. Eckerhart, 461 U.S. 424, 437(1983) ("When an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.").

---

[18]  Plaintiffs make additional arguments in their reply brief based on constitutional rights and guarantees and civil rights statutes; however, in light of the above-stated ruling in note 15 of this Order (*supra*), the Court declines to uphold said arguments.

Here, whether the Court utilizes Defendant's or Plaintiffs' recovery numbers, there was only partial success as Plaintiffs did not recover the entirety of what was originally sought. The Court will apply an across the board reduction of the lodestar[19] amount ($272,866.87) of 25% and the resulting attorneys' fee award is: $204,650.15.

Next, the Court will consider the matter of costs. The parties' settlement agreement states: "[t]he amount of taxable costs to be awarded will be also be determined by the Court . . . ." Doc. No. [136-1], p. 3.

In their motion, "Plaintiffs seek total costs (including the expert fees) of $75,471.94" and cite a number of non-binding cases in support of their motion. Doc. Nos. [140], p. 9; [140-1], pp. 57–61.

In its opposition brief, Defendant argues that Plaintiffs' request for costs is not properly supported as required by Local Rule 54.2 and most, if not all, of the costs requested by Plaintiffs are not "taxable costs" pursuant to 28 U.S.C. § 1920 (the statute that provides for taxation of costs). Doc. No. [141], pp. 1–2. Specifically, Defendant states: "Plaintiffs' counsel requested to be reimbursed for the expense of

---

[19] In accordance with applicable case law, the Court applies an across the board cut and considers the entire case, as opposed to attempting to identify specific hours spent in unsuccessful claims and motions as urged by Defendant. Doc. No. [141], p. 8–10.

regular mail and overnight mail in the amount of $1,474.76, the expense of online legal research in the amount of $2,242.23,[20] local travel costs in the amount of $508.21, expedited transcript fees in the amount of $42.55, consulting fees to the Brek Group in the amount of $150, consulting fees (*i.e.*, expert fees) to Charles River Associates in the amount of $61,895, and teleconference fees in the amount of $733.52. None of these are taxable costs."  Doc. No. [141], p. 18.

The key to this dispute is to determine what the words "taxable" and "costs" mean.  This is a matter of contract interpretation, as the settlement agreement is essentially a contract between the parties.  See Hayes v. Nat'l Serv. Indus., 196 F.3d 1252, 1254 (11th Cir. 1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements.").    Under Georgia law, "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1.  One rule of Georgia contract construction is that "[w]ords generally bear their usual and common signification." O.C.G.A. § 13-2-2.  Thus, it is proper to look to the dictionary to supply the definition of the word, "taxable." See Archer W. Contractors, Ltd. v. Estate of Pitts, 292 Ga. 219, 224, 735 S.E.2d 772, 777 (2012) (holding that looking to the dictionary for the definition of a term is a good start, "inasmuch as we generally

---

[20] The Court calculated the legal research amount to be $2,242.21.

accept that contractual terms carry their ordinary meanings, O.C.G.A. § 13–2–2(2), and a dictionary is a useful tool for narrowing the range of meanings ordinarily attributed to a word. But a dictionary does not always provide a complete answer. More important, the context in which a contractual term appears always must be considered in determining the meaning of the term. "[C]ontracts must be construed as a whole . . . .").

The word "taxable" is defined in Black's Law Dictionary as follows: "(Of legal costs or fees) assessable . . . expert-witness fees are not taxable court costs." Black's Law Dictionary (10th ed. 2014).

In addition, the Supreme Court has held that the word "[c]osts" is a term of art that does not generally include expert fees. The use of 'costs' rather than 'expenses' strongly suggests that [the statute at issue][21] was not meant to be an open-ended provision making [parties] liable for all expenses." Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 291–92 (2006).

After consideration of the definitions and case law pertaining to the words "taxable" and "costs," as well as the context of its placement in the settlement agreement, the Court finds that the dictionary definition and case law can be utilized

---

[21]  The statute at issue in the Arlington case was 20 U.S.C. §1415 (Individuals with Disabilities Education Act).

to remove any ambiguity and no further contract construction is necessary.  The

Court finds that the taxable costs are those that are permitted by 28 U.S.C. § 1920

which provides in relevant part:

> A judge or clerk of any court of the United States may tax as costs the following:  (1) Fees of the clerk and marshal;  (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

"[C]osts such as general copying, computerized legal research, postage,

courthouse parking fees and expert witness fees, [are] nonrecoverable." Duckworth

v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996).

The Court also adopts the reasoning of the Second Circuit in which the court

held that "[u]nlike other statutory provisions explicitly authorizing such

reimbursement, 29 U.S.C. § 216(b) of the FLSA does not expressly address awards

reimbursing prevailing plaintiffs for expert fees." Gortat v. Capala Bros., 795 F.3d

292, 296 (2d Cir. 2015) (citing as an example, 42 U.S.C. § 1988(c) ( "In awarding an

19

attorney's fee under subsection (b) of this section in any action or proceeding to enforce a provision of section 1981 or 1981a of this title, the court . . .  may include expert fees . . . .")). "Because 29 U.S.C. § 216(b) of the FLSA does not explicitly authorize courts to award reimbursement for expert fees, it  does not permit a court to award such fees beyond the allowances recoverable pursuant to 28 U.S.C. § 1920 as limited by 28 U.S.C. § 1821." Gortat, 795 F.3d at 296–97. [22]

The Court disallows the costs claimed by Plaintiffs (for the expenses of regular/overnight mail, online legal research, local travel costs, expedited transcript fees, consulting fees to Brek Group, consulting fees to Charles River Associates, and teleconference fees) as not within 28 U.S.C. § 1920.  In summary, Plaintiffs may recover $8,425.69 in costs.

---

[22]  The Court notes that there is one Northern District of Georgia case (cited by Plaintiffs) which appears to award the entirety of Plaintiffs' out of pocket (FLSA) expenses; however, said cases is distinguishable as there was no challenge to the moving party's entitlement to the expenses and it is not clear if expert expenses were at issue.  See Eason, 108 F. Supp. 3d at 1365 ("Defendants have not challenged the reasonableness of Plaintiffs' costs and expenses or their entitlement to an award of such expenses . . . .").

## CONCLUSION

Plaintiffs' Motion for Attorneys' Fees and Expenses (Doc. No. [140]) is hereby **GRANTED IN PART AND DENIED IN PART**.

Attorneys' are awarded in the amount of $204,650.15.

Litigation costs are awarded in the amount of $8,425.69.

Defendant's Motion for Leave to File a Surreply Contesting Plaintiffs' Reply in Support of Petition for Attorney Fees and Expenses (Doc. No. [145]) is hereby **DENIED**;[23] however, the Court will consider the statements made in Doc. No. [145].

The substantive case having settled and the Court having decided the matter of attorneys' fees, there is nothing further remaining for the Court to consider. This case is hereby **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to terminate this civil action.

IT IS SO ORDERED, this 29th day of November, 2016.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

---

[23] "Neither the Federal Rules of Civil Procedure nor this Court's Local Rules authorize the filing of surreplies as a matter of right or in the ordinary course of litigation. Although the Court may permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists . . . ." Adams v. Lab. Corp. of Am., No. 1:10-CV-3309, 2012 WL 370262, at * 6 (N.D. Ga. Feb. 3, 2012) (citations omitted).

AO 72A
(Rev.8/82)